**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**PARKERSBURG DIVISION**

DOUGLAS LIBERT,

                Plaintiff,

v.                                        CIVIL ACTION NO. 6:10-cv-00558

PARKERSBURG CITY POLICE, et al.,

                Defendants.

**MEMORANDUM OPINION & ORDER**

Pending before the court is the defendants' Motion for Summary Judgment [Docket 16]. Pursuant to 28 U.S.C. § 636(b)(1)(B), this civil case was referred to the Honorable Mary E. Stanley, United States Magistrate Judge, for proposed findings of fact and recommendations for disposition. On March 11, 2011, the Magistrate Judge submitted proposed findings [Docket 29] and recommended that the court grant the defendants' Motion for Summary Judgment. On April 13, 2011, the plaintiff timely filed objections to the proposed findings and recommendations ("PF&R") [Docket 32].[1]

The court has reviewed *de novo* those portions of the PF&R to which the plaintiff specifically objects and **FINDS** that the objections lack merit. Accordingly, the court **ADOPTS** and incorporates herein the Magistrate Judge's Proposed Findings and Recommendation and **GRANTS** the defendants' Motion for Summary Judgment [Docket 16].

---

[1] On April 15, 2011, the plaintiff filed additional, untimely "Supplemental Objections" [Docket 33] to the PF&R that the court has considered for purposes of this Order.

**I.      Background**

After *de novo* review of those portions of the Magistrate Judge's report to which objections were filed, the court **ADOPTS** the statement of facts set forth in the PF&R. The detailed account provided by the Magistrate Judge therein requires only a brief summary here.

The claims in this case arise out of a long-term, neighborhood dispute between the plaintiff, Douglas Libert, and both the Banky family and Donald Lucas, Jr. The plaintiff states that the Banky family and Donald Lucas, Jr., regularly harassed and antagonized him. As a consequence of this ongoing quarrel, the police were called on multiple occasions.

The plaintiff asserts that on September 28, 2008, he was in his car on his way home when he encountered Lucas, who was in his own car. The plaintiff alleges that Lucas threatened him through the car window and then, after the plaintiff arrived home and parked, assaulted him. The plaintiff asserts that throughout the altercation he was merely defending himself on his own property. Defendant Dallas Donaldson, a Parkersburg City police officer, responded to the plaintiff's report of this incident, but the plaintiff was unhappy with the investigation.

Due to these ongoing conflicts, and his concern about possible burglars, the plaintiff, prior to the incident described above, had installed security cameras in his house. The day after Lucas's alleged assault on the plaintiff, the plaintiff's neighbors called the Parkersburg police to complain about one of the cameras. At approximately 8 p.m., an officer arrived at the plaintiff's house. The officer's account of what ensued differs from the plaintiff's account. According to the plaintiff, who was unaware that the police had been called, the officer began pounding on the door and, when the plaintiff asked who it was, allegedly replied that it was "Santa Claus." The plaintiff initially thought it was the neighbors and prepared to defend himself. Upon looking out the window, however, the

-2-

plaintiff saw a fully-uniformed police officer and opened the door, permitting Police Officer Benjamin Ward to enter. According to the plaintiff, Officer Ward then began screaming at him and acting belligerently. Officer Ward purportedly demanded to see the security camera, to which the plaintiff led him, and then Officer Ward instructed the plaintiff to remove it. Officer Ward allegedly told the plaintiff that he might come back with an arrest warrant. The plaintiff states that this incident was very upsetting to him, and, after Officer Ward left, the plaintiff called the police to report it.

In an affidavit attached to the defendant's motion for summary judgment, Officer Ward denied calling himself "Santa Claus," and states that he solely identified himself as a member of the Parkersburg Police Department. Officer Ward states that the plaintiff invited him into his home, and that he himself did not use force or threats to enter the residence. According to Officer Ward, the plaintiff voluntarily showed him the camera and voluntarily removed it when asked by Officer Ward.

When the plaintiff called the police to follow up about the camera two days later, the police informed him that Lucas would be pressing charges for battery against the plaintiff as a result of the September 28, 2008 fight. The plaintiff was arrested later on the battery charge, which was dismissed in March or April of 2009. Lucas had alleged that the plaintiff sprayed him with pepper spray and then "engauged [*sic*] in a physical fight during a heated argument over a car accident." (Def.'s Mot. Summ. J. Ex. 3 [Docket 16-3], at 3.)

On April 22, 2010, the plaintiff filed the instant Complaint against the Parkersburg City Police, Officer Benjamin Ward, and Officer Dallas Donaldson. The first two claims, brought under 42 U.S.C. § 1983, assert violations of the plaintiff's Fourth Amendment rights. The third, state law

claim asserts a violation of W. Va. Code § 29-12A-4(c)(2). Specifically, the Complaint alleges: (1) that Officer Ward conducted an unconstitutional search of the plaintiff's house in violation of the Fourth Amendment; (2) that the plaintiff was maliciously prosecuted for battery in violation of the Fourth Amendment, and (3) that the defendants, in general, failed to protect the plaintiff from Lucas in violation of W. Va. Code § 29-12A-4(c)(2). (Compl. [Docket 2].) On November 15, 2010, the defendants filed a Motion for Summary Judgment [Docket 16]. The Magistrate Judge submitted her PF&R [Docket 29] to the court on March 11, 2011. After being granted an extension, the plaintiff timely filed specific objections on April 13, 2011 [Docket 32].[2] The matter is now ripe for review.

## II. STANDARD OF REVIEW

### a. *Magistrate Judge's Recommendations*

When a Magistrate Judge issues a recommendation on a dispositive matter, the court reviews *de novo* those portions of the Magistrate Judge's report to which specific objections are filed. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). This court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *Thomas v. Arn,* 474 U.S. 140, 150 (1985). The court will consider the fact that Plaintiff is acting pro se, and his pleadings will be accorded liberal construction. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978).

---

[2] As part of his objections, the plaintiff moves this court for an order to obtain phone calls from the West Virginia State Police and to permit filing of the plaintiff's video deposition. (Objections [Docket 32], at 23.) To the extent these are discovery motions or motions for third-party subpoenas, the motions are untimely and the plaintiff failed to follow the local rules of civil procedure. The court, therefore, will not consider these as separate motions.

*b.     Summary Judgment*

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *abrogated on other grounds*, 490 U.S. 228 (1989).

*b.     Summary Judgment*

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *abrogated on other grounds*, 490 U.S. 228 (1989).

### III. Discussion

The Magistrate Judge recommends granting the defendants' Motion for Summary Judgment in its entirety. According to the Magistrate Judge, the plaintiff has failed to show "that a genuine issue of material fact exists" as to his Fourth Amendment unlawful search and malicious prosecution claims. (PF&R, at 11, 13.) The Magistrate Judge additionally recommends that the court find that the plaintiff has "failed to make an evidentiary showing sufficient to establish a special duty of care" necessary to support his claim, pursuant to W. Va. Code § 29-12A-4(c)(2), that the police failed to protect him. (PF&R, at 19.) Each of the plaintiff's objections are addressed below.

*a. The Plaintiff's Unlawful Search Claim*

The Magistrate Judge recommends granting summary judgment to the defendants as to the Fourth Amendment unlawful search claim because, based on "the totality of the circumstances, the plaintiff consented to [Officer] Ward's search." (PF&R, at 11.) The plaintiff objects and argues that his consent was not voluntary. In support of his position, the plaintiff alleges that Officer Ward identified himself only as "Santa Claus" when he knocked on the plaintiff's door. Once the plaintiff opened the door, Officer Ward allegedly told the plaintiff there was an "emergency situation" and acted aggressively and belligerently toward the plaintiff. (Objections, at 1.) The plaintiff maintains that Officer Ward had acted in a similarly belligerent and aggressive manner during prior encounters with the plaintiff, and the plaintiff feared Officer Ward would injure him if he refused the Officer's "demand" to enter the house. (Id.) Finally, the plaintiff asserts that he had taken medication for a

pre-existing medical condition and was "very vulnerable." (Id. at 3.) The plaintiff, therefore, objects to the finding that his consent was voluntary.[3]

The Fourth Amendment protects "[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. "[A] search conducted without a warrant issued upon probable cause is per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (internal quotation marks omitted). "Voluntary consent to a search is one such an exception." *U.S. v. Lattimore*, 87 F.3d 647, 650 (4th Cir. 1996). To be voluntary, consent must not be the product of duress or coercion. *Schneckloth,* 412 U.S. at 248. The issue of "whether a consent to a search was in fact 'voluntary' or is the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Id.* at 227. Factors to consider include the plaintiff's "age, maturity, education, intelligence, and experience" as well as the "officer's conduct; the number of officers present; and the duration, location, and time of the encounter." *Lattimore*, 87 F.3d at 650. Additionally, the court should take into account the plaintiff's vulnerability and whether the plaintiff knew he could refuse consent. *Schneckloth,* 412 U.S. at 229, 248-49.

---

[3] The plaintiff additionally alleges in his objections that Officer Ward, upon entering the house, forced the plaintiff to remove his "lawfully placed security camera" resulting in conversion of plaintiff's property. (Objections, at 3.) The plaintiff does not allege that Officer Ward took the camera, and the plaintiff's objection is therefore meritless. *See Politino v. Azzon, Inc.*, 569 S.E.2d 447, 453 (W. Va. 2002) (finding no conversion when the alleged converter never "personally assumed control over, or ever personally exercised dominion over the property in question"); *see also Rodgers v. Rodgers*, 399 S.E.2d 664, 677 (W. Va. 1990) ("[C]onversion, [] is essentially the exercise of dominion over the personal property of another by a person who has no legal right to do so.").

Considering all of the factors and drawing any permissible inference from the underlying facts in the light most favorable to the plaintiff, the totality of the circumstances show without contradiction that the plaintiff voluntarily consented to the search of his house. In the instant case, the plaintiff is an adult who holds an advanced degree. Moreover, despite Officer Ward's alleged identification of himself as "Santa Claus," the plaintiff acknowledges that, before opening his door, he saw a fully-uniformed police officer. (Objections, at 1.) Upon seeing the officer, the plaintiff admittedly "opened the door" and "permitted" Officer Ward to enter his house. (Objections, at 1.) The plaintiff testified in his deposition that Officer Ward was aggressive, but "[h]e didn't actually – he didn't like push the door open. The door was already open. I mean, he had the screen door open, and I just opened the door and he walked in." (Pl.'s Dep. 105:7-11, Oct. 27, 2010 [Docket 27-1].) The plaintiff also admits that he led Officer Ward to the problematic camera, at which time Officer Ward allegedly ordered the plaintiff to remove it and threatened to return with a warrant if the plaintiff replaced it. Officer Ward then left the house. (Objections, at 1.) In short, the plaintiff opened the door, allowed Officer Ward to enter, and led Officer Ward to the camera. *See United States v. Ingram*, No. 3:10-cr-069, 2010 WL 5441671, at n. 2 (W.D. N.C. Dec. 28, 2010) (finding voluntary consent to search a home when the record indicated that the officer "was invited into the house" and led to the inculpatory evidence). Accordingly, the court overrules the plaintiff's objection and **FINDS** that the defendants are entitled to summary judgment as to the unlawful search claim.

While the court has found that there is no question of material fact as to the plaintiff's consent to enter his home, I will take the opportunity to note that peace officers are sometimes ill-advised in seeking entry into a person's home, by consent or otherwise, where there is no probable

cause to believe that a crime has been committed. Officers would be well-advised to avoid taking sides in disputes between neighbors.

    b.   *The Plaintiff's Malicious Prosecution Claim*

  The Magistrate Judge additionally recommends that the court find that there was probable cause for the plaintiff's arrest after his dispute with Lucas and, therefore, recommends granting the defendants' Motion for Summary Judgment on the plaintiff's malicious prosecution claim. (PF&R, at 13.) The plaintiff contends, however, that he was "defending himself from Mr. Lucas" throughout the altercation. (Objections, at 15.) Had Officer Donaldson investigated the incident properly, the plaintiff argues, he would have discovered that the plaintiff was the victim and the officer had no probable cause for his arrest.[4]

  As the Supreme Court has made clear, 42. U.S.C. § 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 (1979). Because of this established principle, the Fourth Circuit has recognized that "there is no such thing as a '§ 1983 malicious prosecution' claim." *Lambert v. Williams*, 223 F.3d

---

[4] The plaintiff has submitted several documents from purported "experts" in support of his argument, including a letter from criminal defense attorney, Jay Gerber, and a report from police practices expert, Diop Kamau, in whose opinions there was no probable cause for arrest. (Objections, at 16, 17-20.) Mr. Kamau concluded that "the Parkersburg Police Department did a substandard traffic investigation and assault investigation. My expert opinion to a reasonable degree of certainty is that Mr. Libert was wrongfully arrested." (Id. at 19.)

  As a general proposition, expert witnesses are "precluded from opining on the law governing the case." *Long v. Blair*, No. 2:09-349, 2010 WL 1930219, at *2 (S.D. W. Va. May 12, 2010) (citing *Adalman v. Baker, Watts & Co.*, 807 F.2d 359, 366 (4th Cir. 1986) (affirming the exclusion of testimony by an expert witness which included legal conclusions)). Accordingly, the court will consider the expert opinions "embrac[ing] an ultimate issue of fact," but will disregard the proffered opinions to the extent they merely "state a legal conclusion." *Id.*

257, 262 (4th Cir. 2000). Instead, an appropriate § 1983 claim in this context is "a claim founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution—specifically, the requirement that the prior proceeding terminate favorably to the plaintiff." *Id.* (citing *Brooks v. City of Winston Salem*, 85 F.3d 178, 183 (4th Cir. 1996)). "The common law tort of malicious prosecution is well-established: a prima facie case of malicious prosecution must include (1) the initiation or maintenance of a proceeding against the plaintiff by the defendant; (2) termination of that proceeding favorable to the plaintiff; (3) lack of probable cause to support that proceeding; and (4) the defendant's malice." *Id.* at 260 (*citing* W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts 874 (5th Ed.1984)). The only issue in this case is whether probable cause existed to support the plaintiff's arrest.

Probable cause is defined as facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person in believing that the suspect has committed an offense. *Cloaninger ex rel. Estate of Cloaninger v. McDevitt*, 555 F.3d 324, 334 (4th Cir. 2009). If probable cause existed for the plaintiff's charges, then the plaintiff's claim must fail.

On October 2, 2008, a detached and neutral magistrate judge in Wood County, West Virginia, found that there was probable cause to believe that the plaintiff committed battery and issued a warrant for the plaintiff's arrest. (Defs.' Mot. Summ. J. Ex. 3 [Docket 16-3], at 4.) As a result of this determination, in order to survive summary judgment the plaintiff would have to show there is a genuine issue of material fact as to whether "a reasonably well-trained officer in [the Defendant's] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Malley v. Briggs*, 475 U.S. 335, 345 (1986). There is no such evidence in this case. It is undisputed that the plaintiff engaged in a physical

altercation with Lucas in which both parties suffered minor injuries. According to the police report, a witness saw the two men "get out of their vehicles and approach each other" before fighting. (Defs.' Mot. Summ. J. Ex. 3, at 11.) Lucas subsequently filed his complaint against the plaintiff. Probable cause existed to believe that the plaintiff committed battery.

The plaintiff argues, however, that a more complete investigation of the incident would have revealed the plaintiff was merely defending himself thus obviating a finding of probable cause. The officer's alleged failure to fully investigate the incident does not negate the probable cause established by the fight and Lucas's complaint. *See Villeda v. Prince George's County, Md.*, 219 F. Supp. 2d 696, 701 (D. Md. 2002) ("Plaintiff's claims boil down to a complaint that [the detective] did not investigate the incident between Plaintiff and [another person] thoroughly enough to uncover the information that would have exculpated Plaintiff. However, the failure to pursue potentially exculpatory leads, in itself, is not sufficient to negate probable cause."). Accordingly, the court overrules the plaintiff's objection as to the malicious prosecution claim. The court **FINDS** that there was probable cause to arrest the plaintiff, **ADOPTS** and incorporates herein the Magistrate Judge's Proposed Findings and Recommendation, and **GRANTS** the defendants' Motion for Summary Judgment as to the malicious prosecution claim.

    *c.*    *The Plaintiff's Failure to Protect Claim*

Finally, the Magistrate Judge recommends dismissing the plaintiff's failure to protect claim brought under W. Va. Code § 29-12A-4(c)(2). Because the plaintiff does not object to the Magistrate Judge's proposed finding, the court need not review *de novo* this portion of the PF&R. *Thomas v. Arn,* 474 U.S. 140, 150 (1985). Accordingly, the court **ADOPTS** and incorporates

herein the Magistrate Judge's Proposed Findings and Recommendation and **GRANTS** the defendants' Motion for Summary judgment as to the failure to protect claim.

To the extent that the petitioner's overall objections to the PF&R can be construed as presenting any other objection, the court **FINDS** that they are general and conclusory and that the court need not conduct a *de novo* review. *See Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In sum, the court **FINDS** that the defendants are entitled to summary judgment.

### IV. Conclusion

For the foregoing reasons, the court **ADOPTS** and incorporates herein the Magistrate Judge's Proposed Findings and Recommendation [Docket 29] and **GRANTS** the defendants' Motion for Summary Judgment [Docket 16].

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: June 29, 2011

Joseph R. Goodwin, Chief Judge